UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY A. WHITE,

    *Plaintiff,*   CASE NO. 14-CV-11698

v.   MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

**OPINION AND ORDER**[1]

**I.   INTRODUCTION**

This is an action for judicial review of Defendant's decision denying Plaintiff's claim for Supplemental Security Income ("SSI") benefits. The case is before this magistrate judge pursuant to the parties' consent under 28 U.S.C. § 636(c) and the District Judge Gerald E. Rosen's order of reference. (Doc. 15.) Pursuant to E.D. Mich. LR 7.1(e)(2), the parties' cross-motions for summary judgment (Docs. 13, 17, 18) will be decided without oral argument.

**II.   ANALYSIS**

    **A.   Background**

Plaintiff Terry A. White was forty-five years old at the time of the most recent administrative hearing. (Transcript, Doc. 10 at 30.) Plaintiff's employment history includes work as a laborer for a trucking company and an erosion control company for twenty-two years. (Tr. at 134.) Plaintiff filed the instant claim for benefits on September 30, 2011, alleging, in an amended

---

[1] The format and style of this Opinion and Order are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002); Fed. R. Civ. P. 5.2(c)(2)(B); E.D. Mich. Admin. Order 07-AO-030; and guidance promulgated by the Administrative Office of the United States Courts, which can be found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This opinion only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

onset date, that he became unable to work on September 26, 2011. (Tr. at 30, 105.) The claim was denied at the initial administrative stage. (Tr. at 52.) In denying Plaintiff's claim, the Commissioner considered disorders of the back, discogenic and degenerative, and affective disorders as possible bases for disability. (*Id.*) On November 7, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Renita Barnett-Jefferson, who considered the application for benefits *de novo*. (Tr. at 8-25, 26-51.) In a decision dated February 15, 2013, the ALJ found that Plaintiff was not disabled. (Tr. at 21.) Plaintiff requested a review of this unfavorable decision on March 11, 2013. (Tr. at 6-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 8, 2014, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On April 29, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

The Social Security system has a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the factual determinations to ensure they are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The administrative process provides multiple opportunities for reviewing the state agency's initial determination. The Plaintiff can first appeal the decision to the Social Security Agency, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). Once this administrative process is complete, an unsuccessful claimant may file an action in federal district court. *Sullivan v. Zebley*, 493 U.S. 521, 524-28 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final administrative decision. The statute limits the scope of judicial review, requiring the Court to "'affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's review of the decision for substantial evidence does not permit it to "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely on an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The court can only review the record before the ALJ. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "[T]he . . . standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390). "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (quoting *Mullen*, 800 F.2d at 545).

A court's review of the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))).

### C. Governing Law

"'The burden lies with the claimant to prove that she is disabled.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353). *Accord Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401-34, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381-85. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474. *See also Cruse*, 502 F.3d at 540. The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 26, 2011, the application date. (Tr. at 13.) At step two, the ALJ found that Plaintiff's history of right

nephrectomy, arthritis, major depressive disorder, and history of alcohol and polysubstance dependence were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 13-15.) At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. at 19.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 15-19.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 20-21.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has not had a driver's license since he was eighteen because of prior tickets and drunk driving convictions. (Tr. at 31-32, 106.)[2]

Plaintiff underwent a psychiatric evaluation with Mukesh Lathia, M.D., on November 5, 2010. (Tr. at 210-12.) Plaintiff reported that he began drinking alcohol at age twelve and increased his intake around the age of sixteen. (Tr. at 210-11.) Currently, he drinks about twelve beers per day. (*Id.*) Plaintiff began using cocaine when he turned thirty-five, and reported that he "did two lines" one week prior to the assessment. (Tr. at 211.) In addition, Plaintiff began smoking marijuana at twelve years of age and still smoke "about five joints per day." (*Id.*) Plaintiff's longest period of sobriety was the one year he attended the BASIS program, which required three weekly meetings. (*Id.*) Dr. Lathia noted that Plaintiff's "thought process is goal-directed and coherent" and that he was "alert and oriented x3" but that his "judgment and insight are limited." (*Id.*) Dr. Lathia

---

[2] *See also* Michigan Dep't of Corrections, *Offender Tracking Information System*, http://mdocweb.state.mi.us/OTIS2/otis2.aspx, (search for offender number 722291) (last visited February 25, 2015). Plaintiff was convicted of operating while intoxicated (third offense), was sentenced to eighteen months to five years imprisonment, and was discharged on March 19, 2012.

diagnosed recurrent major depression, alcohol abuse, cocaine and marijuana abuse, and history of alcohol dependence; he gave an extremely guarded prognosis, and assessed a Global Assessment of Function ("GAF") score of forty. (Tr. at 212.) Such a score indicates "[s]ome impairment in reality testing or communication . . . [or] major impairment in several areas, such as work or school, family relations, judgment , thinking, or mood . . . ." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000).[3] Dr. Lathia noted that Plaintiff was wearing a tether and was to be picked up by a Sheriff's Deputy. (*Id.*)

On November 7, 2010, Dr. Michael Ingram noted that Plaintiff "admits there has been suicidal thought" and that Plaintiff had been "off his medications"because "when he was released from the prison [on September 15, 2010] he got a 30 day supply." (Tr. at 213.) Dr. Ingram continued medications for Plaintiff and recommended that Plaintiff's stay in the Crisis Residential program be extended. (*Id.*)

In June, August, and September, 2011, physician's assistant ("P.A.") Brian Maze noted that Plaintiff's judgment and insight were intact, his memory was intact for recent and remote events and that although he had a flat affect, he answered questions well. (Tr. at 223, 226, 229.) Plaintiff's depression was "stable" or "better" and his medications were continued. Plaintiff was also continued on Naproxen for back and neck pain. (Tr. at 223-24, 226-27, 229-30.)

On September 6, 2011, a radiological report of Plaintiff's cervical spine showed "[m]ild spurring at C4-C5 with no fracture or subluxation[,]" that the "[c]ervical foramina are widely patent[,]" and that the "[f]indings are stable from 3/24/2008 and 04/08/2008." (Tr. at 234.) Images of Plaintiff's lumbar spine also taken that day were "normal." (Tr. at 235.)

---

[3] The most recent edition of this text, however, rejects the use of GAF scores. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed., 2013).

8

On November 1, 2011, Dr. Kishore Kondapaneni performed a comprehensive psychiatric evaluation on Plaintiff. (Tr. at 268.) Plaintiff's chief complaint was his desire "to continue [his] medications." (Tr. at 268.) Dr. Kondapaneni diagnosed major depression (moderate and mild), comorbid condition, nicotine dependency, history of polysubstance abuse in remission, and assessed a GAF of 52. (Tr. at 269.) That score indicates moderate difficulties in occupational or social functioning. Am. Psychiatric Ass'n, *supra* at 34. Plaintiff's medications were adjusted and continued. (Tr. at 270.)

On November 30, 2011, P.A. Maze indicated that Plaintiff said he "would like to start working at Do-All," reported he "was recently lifting 80 lb bags of cement with no neck or [lower-back pain] since last visit," and he "report[ed] he can lift '100 lbs' without pain." (Tr. at 240.) On February 2, 2012, Plaintiff was consulted for a medication review and reported continuing anxiety; he added that he would be off probation in forty days. (Tr. at 252.) On March 6, 2012, Plaintiff's mood was noted to be calm, depressed, his hygiene good, his affect appropriate, and he was compliant with his medication. (Tr. at 248.) It was also noted that Plaintiff was working at Do-All. (*Id.*)

In August of 2012, Plaintiff underwent surgery to remove a right renal carcinoma. (Tr. at 278-80.) All went well with the surgery and the recovery. (Tr. at 376.)

Plaintiff participated in treatment with Crossroads for Recovery in 2012. (Tr. at 287.) In July, Dr. Harold Lenhart reported that Plaintiff's "depression is under fair control. He still has a lot of difficulties with attention and concentration." (Tr. at 288.) However, in the mental status examination, Dr. Lenhart found that Plaintiff "appear[ed] capable of attending and concentrating" and assessed a GAF score of 45 to 50. (Tr. at 289.) In September of 2012, Harold Lenhart told Plaintiff he would be taken off Xanax and Plaintiff was "not at all pleased about that, and he is

9

wishing that I could continue it for another three weeks or so. I declined, however . . . ." (Tr. at 287.)

In October of 2012, Plaintiff reported to P.A. Maze that he had "[b]een off work since June because insurance was taken away by FIA since making [sic] too much money[.]" (Tr. at 367.) On October 16, 2012, Dr. Lenhart noted that although Plaintiff's mood was "depressed and anxious[,]" his "[t]houghts are logical[,] [h]e is future oriented[, and] [h]e has insight." (Tr. at 377.)

Plaintiff was examined at the request of Disability Determination Services ("DDS") by Dr. R. Scott Lazzara on December 19, 2012. (Tr. at 378-82.) Dr. Lazzara noted that Plaintiff has had a history of back pain but had not participated in any physical therapy or had any surgical intervention for the pain. (Tr. at 378.) Plaintiff reported that "he can sit about 15 minutes, stand about five minutes and walk about a half a mile. He can lift 40 pounds on occasion." (*Id.*) Dr. Lazzara found "no evidence of joint laxity, crepitance, or effusion. Grip strength remains intact. Dexterity is unimpaired . . .[and he had] no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting, and no difficulty standing on either foot." (Tr. at 379.) Plaintiff's strength and tone was normal in all joints. (Tr. at 380-81.) Dr. Lazzara concluded that Plaintiff could lift up to twenty pounds frequently, lift and carry up to ten pounds frequently, and lift and carry up to one-hundred pounds occasionally. (Tr. at 383.) Dr. Lazzara also concluded that Plaintiff could sit, stand, or walk each for one hour at a time and each for six hours total in an eight-hour workday. (Tr. at 384.) Plaintiff was able to use his hands and feet occasionally or frequently, depending on the task, and was able to perform most postural activities occasionally but could balance and kneel frequently. (Tr. at 385-86.) Plaintiff had only occasional environmental limitations, and was deemed able to do all of the activities listed, such as shopping, walking, cooking, and taking care of himself. (Tr. at 388.)

Plaintiff was examined by Dr. Michael Brady, Ph.D. (Tr. at 395-98.) Dr. Brady noted that Plaintiff's "ability to maintain concentration does seem somewhat impaired," but also found his "ability to understand and complete tasks and expectations does not appear to be significantly limited." (Tr. at 398.) Dr. Brady added that as "a result of his emotional state he may often be distracted and his effectiveness and performance will likely be limited and slowed." (*Id.*) Dr. Brady diagnosed depression, recurrent, severe, without psychotic features, and assessed a GAF score of 50 (*id.*) indicating moderate problems. Am. Psychiatric Ass'n, *supra* at 34. Dr. Brady also completed a medical source statement of his ability to do work activities. He found only mild limitations as to understanding, remembering, and carrying out simple instructions, and the ability to make judgments on simple work-related decisions, and found moderate limitations as to the ability to understand, remember, and carry out complex instructions and to make judgments on complex decisions. (Tr. at 391.) Dr. Brady noted that the "severity of depression will likely make it difficult for him to follow and complete tasks that are more complex." (*Id.*) Dr. Brady found moderate limitations in social interaction due to Plaintiff's "social isolation," but found no other limitations. (Tr. at 392.)

In his daily activity report, Plaintiff stated that he is able to work as a volunteer in a soup kitchen in four-hour shifts, has no difficulties with personal care, does not need reminders, prepares his own meals, does his own laundry and dishes for three hours once a week, uses public transportation, shops for food in stores for 2 hours at a time, and handles his own finances. (Tr. at 146-48.) Plaintiff enjoys watching television and prefers to be alone, although he lives with a friend. (Tr. at 145, 149-50.)

At the administrative hearing, Plaintiff testified that he still lives in a house with his friend. (Tr. at 31.) Plaintiff has not had a driver's license since he was eighteen years old due to "a bunch

11

of tickets."[4] (Tr. at 31-32.) Plaintiff last worked at Do-All from December 2011 to June 2012, usually working "close to 30" hours per week until his hours were reduced. (Tr. at 33.) He stopped working because his employment made him ineligible for his medical program. (Tr. at 33-34.) Asked why he could not work, Plaintiff responded that his depression and low energy after his kidney removal surgery prevented him. (Tr. at 34-35.) When asked about his arthritis, Plaintiff responded that he is in constant pain. (Tr. at 36.) Plaintiff indicated that "anxiety gives me racing thoughts and scrambles my brain, so it's hard to think or concentrate." (Tr. at 38.) Plaintiff testified that he does dishes and laundry but usually goes out and buys food. (Tr. at 40-41.) Plaintiff does not have any problem taking care of himself. (Tr. at 42.) Plaintiff no longer smokes, drinks alcohol, or does any drugs, and has been sober since 2011. (Tr. at 41.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who

> is limited to light work, with occasional use of the right, upper extremity for pushing and pulling of hand controls. The individual is limited to occasional climbing [sic] ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The individual should never climb ladders and scaffolds, or ropes. The individual should never work in environments of unprotected heights, or hazardous moving mechanical parts. Individual [sic] is limited to simple tasks, simple work-related decisions, with occasional contact with the public. And the individual is limited to a few changes in routine work scene.

(Tr. at 48.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 4,500 jobs as a packer, the 4,500 jobs as an inspector checker, and the 2,000 office-setting jobs available in the State of Michigan. (Tr. at 48-49.) When asked whether a limitation to sedentary work would change the availability of jobs, the VE responded that there would be 750 surveillance monitor jobs, 4,500 inspector jobs, and 3,000 jobs in office settings. (Tr.

---

[4] As noted above, he also had convictions for drunk driving.

12

at 49-50.) The VE affirmed that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 49.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work:

> I find that the claimant has the residual functional capacity to perform light work as defined 20 CFR 416.967(b) except to occasionally use the right upper extremity for pushing and pulling of hand controls. He should never climb ladders, ropes and scaffolds. The claimant is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Furthermore, the claimant should never work in environment of unprotected heights and hazardous moving mechanical parts. He is limited to simple tasks, and simple work[-]related decisions. Additionally, the claimant should have only occasional contact with the general public. He is limited to few changes in routine work setting [sic].

(Tr. at 15-19.) Light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I find that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

More specifically, Plaintiff contends that the ALJ (1) "failed to include the claimant's problems with concentration in the RFC and failed to articulate the reasons for the omission," because she did not include moderate restrictions as to concentration, persistence or pace; and (2) gave great weight to the consultative psychologist's report but then failed to accord the same weight to the consultative psychologist's findings that Plaintiff had "work preclusive problems with concentration." (Doc. 13 at 5, 8.) The ALJ limited Plaintiff's work to simple tasks, and simple work related decisions. (Tr. at 15.) Therefore, Plaintiff's argument is that this limitation to simple work was insufficient to account for moderate limitations as to concentration, persistence or pace.

This argument is "not uncommon and the case law resolves it both ways." *Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). The *Hernandez* court stated that

> a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace . . . . However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a moderate limitation in concentration. Rather this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment.

*Id.* at *10 (citations omitted). In the present case, looking at the record as a whole, I suggest that the ALJ's findings are supported by substantial evidence.

None of Plaintiff's examining or treating medical sources found Plaintiff disabled nor did their specific findings indicate disabling symptoms. Dr. Lathia found Plaintiff's "thought process is goal-directed and coherent" and that he was "alert and oriented x3." (Tr. at 211.) P.A. Maze consistently noted that Plaintiff's judgment and insight were intact, his memory was intact for recent and remote events, and that although Plaintiff had a flat affect, he answered questions well. (Tr. at 223, 226, 229, 248.) Dr. Lenhart reported that Plaintiff's "depression is under fair control" and although he found Plaintiff "still has a lot of difficulties with attention and concentration[,]" he thought Plaintiff "appears capable of attending and concentrating[.]" (Tr. at 288-89.) Later, Dr. Lenhart noted that although Plaintiff's mood was "depressed and anxious[,]" his "[t]houghts are logical[,] [h]e is future oriented[, and] [h]e has insight." (Tr. at 377.) Dr. Brady noted that Plaintiff's "ability to maintain concentration does seem somewhat impaired" but also found his "ability to understand and complete tasks and expectations does not appear to be significantly limited." (Tr. at 398.) Dr. Brady added that as "a result of his emotional state he may often be distracted and his effectiveness and performance will likely be limited and slowed." (*Id.*) However, in his assessment of Plaintiff's ability to do work, Dr. Brady found only mild limitations as to understanding, remembering, and carrying out simple instructions, and the ability to make judgments on simple work-related decisions; he found moderate limitations as to the ability to understand, remember, and carry out complex instructions and to make judgments on complex decisions. (Tr. at 391.) Dr. Brady noted that the "severity of depression will likely make it difficult for him to follow and complete tasks that are more complex." (*Id.*)

The ALJ's limitation to simple tasks and simple work-related decisions accords with the medical source evidence. I therefore suggest that the record as a whole provides substantial evidence supporting the ALJ's hypothetical and the RFC assessment limiting Plaintiff to simple,

unskilled work. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (finding substantial evidence supported ALJ's decision limiting work to simple, routine, repetitive tasks" where psychiatrist found moderate limitations in the ability to maintain attention and concentration for extended periods); *Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (finding substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Burnett v. Comm'r of Soc. Sec.*, No. 10-cv-14739, 2012 WL 3870362, at *7 (E.D. Mich. Sept. 6, 2012) (finding that where physician found moderate limitations in concentration, persistence and pace also concluded that the plaintiff was able to perform unskilled work, the ALJ's reliance on limitation to unskilled work was not improper); *Cummings v. Comm'r of Soc. Sec.*, No. 10-11621, 2011 WL 3958473 (E.D. Mich. Sept. 8, 2011) (finding that ALJ's omission of concentration and pace limitations in the hypothetical was reasonable where doctor who concluded that the plaintiff had "serious concentration and attention difficulties" also found that his "ability to work may not be severely impaired as long as the job does not involve any appreciable amount of contact with people"); *Young v. Comm'r of Soc. Sec.*, No. 10-cv-11329, 2011 WL 2601014 (E.D. Mich. May 23, 2011) (finding that although moderate limitations were assessed in the record, the plaintiff failed to mention that the same assessment also concluded that the plaintiff was capable of unskilled work).

As to the overall RFC analysis, for all the reasons stated above, I further conclude that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence. The hypothetical and RFC also reflected Plaintiff's own statements that he is able to work as a volunteer in a soup kitchen for

16

four-hour shifts, that he has no difficulties with personal care, that he does not need reminders, that he prepares his own meals, does his own laundry and does dishes for three hours once a week, and that he is able to use public transportation, shop for food in stores for two hours at a time, and handle his own finances. (Tr. at 146-48.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### III. CONCLUSION

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### IV. ORDER

In light of the entire record in this case, the Court finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**, that Defendant's Motion for Summary Judgment (Doc. 17) is **GRANTED**, and that the findings of the Commissioner are **AFFIRMED**.

Date: February 26, 2015         /S PATRICIA T. MORRIS
                                Patricia T. Morris
                                United States Magistrate Judge